IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROBERT B. OAKLEY and | § | |
| IRENE OAKLEY | § | |
| | § | CASE NO. 2:07-CV-351 |
| VS. | § | JURY DEMANDED |
| | § | |
| AIR PRODUCTS AND CHEMICALS, | § | |
| INC., ET AL. | § | |

**DEFENDANT RADIATOR SPECIALTY
COMPANY'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, Radiator Specialty Company ("Radiator"), by and through its attorney, James M. Riley, Jr., and submits this Motion for Summary Judgment[1] as to each and every claim advanced by Plaintiffs[2] against Radiator in their Third Amended Complaint and states:

**Plaintiffs' claims as to Radiator are:**

**(1)      preempted by the Federal Hazardous Substance Act ("FHSA")**, 15 U.S.C. 1261, *et seq*;

**(2)      not actionable under the Consumer Product Safety Act ("CPSA")**, 15 U.S.C. 2051 *et seq*; **and if they are found to be actionable;**

**(3)      preempted by the CPSA;** *id.,*  and

**(4)      not actionable under Hazardous Communication Standard in the Occupational Safety and Health Act ("HAZCOM"),** 29 CFR 1910.1200, *et seq.*

## I.      STATEMENT OF MATERIAL ISSUES UNDER LOCAL RULE CV-56 (A)

1.      Does the Federal Hazardous Substances Act ("FHSA") and its predecessor, the Federal Hazardous Labeling Act ("Labeling Act"), apply to Radiator's product, raffinated-Liquid Wrench?

2.      Does the Consumer Product Safety Act ("CPSA") apply to Radiator's product, raffinated-Liquid Wrench?

---

[1]      The Court has denied Defendants' venue motions and their jurisdictionally-based Motions to Dismiss. Radiator reserved its right to make a new venue challenges.  Also pending is Radiator's Motion to Exclude decedent's hearsay affidavit, which provides Plaintiffs' only evidence of his actual use of a Radiator product.  That motion also seeks to bar expert reliance upon statements in the affidavit.  Without such exposure evidence, Radiator's Motion for Summary Judgment should be granted.  Radiator also has joined in U.S. Steel Corporation's Motion for Summary Judgment because the Plaintiffs have offered no evidence that Mr. Oakley used raffinated Liquid Wrench.

[2]      Although the caption names only Ms. Irene Oakley and the decedent, Mr. Robert Oakley, the body of the Complaint also names the daughter, Dolores Nevins, hence the plural "Plaintiffs."

1

3.      Does the FHSA, preempt Radiator's common law: (1) warning duties; and/or (2) duty to provide a reasonably safe product to plaintiff, replacing such common law duties with objective standards? 16 CFR 1500.1, *et seq.,* and specifically in 16 CFR 1500.14(b)(3)(i-ii) (benzene-containing consumer products)?

4.      If the CPSA applies, does it preempt Radiator's common law: (1) warning duties; and/or (2) duty to provide a reasonably safe product to plaintiff, replacing such common law duties with objective standards? *Id.*

5.      Did the raffinated-Liquid Wrench warning label comply with the warning label requirements found in 16 CFR 1500.14(b)(3)(i-ii)?

6.      Does HAZCOM, which was promulgated in 1983, apply to the raffinated-Liquid Wrench produced between the early 1960's and the spring of 1978?

## II. STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.      <u>Two Formulas of Liquid Wrench Penetrating Oil</u>

1.      Plaintiffs claim that Robert Boone Oakley, deceased, used Liquid Wrench penetrating oil occupationally and at home from approximately 1954 to 2005.  Plaintiffs' Third Amended Complaint, attached as Exhibit "A."

2.      From the 1950s to 1978, Radiator manufactured and sold at least two formulations of Liquid Wrench penetrating oil.[3]  Affidavit of James Wells at ¶ 4, the original of which is attached hereto as Exhibit "B" ("Affidavit of Wells").

3.      One formulation of Liquid Wrench penetrating oil used an ingredient known as "raffinate" ("raffinated-Liquid Wrench").   This formula was packaged in drip, pour or squeeze cans

---

[3]      It is unclear from Mr. Oakley's affidavit, prepared shortly before his death, and the co-worker deposition testimony which formulation of Liquid Wrench, if any, he actually used.  Co-Defendants and Radiator have filed Motions to Exclude Mr. Oakley's affidavit as untrustworthy.  In their Third Amended Complaint, Plaintiffs allege use of the raffinate formulation of Liquid Wrench.  Regardless of which formulation was used by Mr. Oakley, Plaintiffs' claims are preempted.

of varying sizes.  Raffinate was calculated as containing 5% minimum benzene.  Affidavit of Wells at ¶ 6 and Radiator business records at RSC 00014 and 16 (Exhibit "1" thereto).

4.      During the alleged exposure time period, one formula of Radiator Specialty Company's Liquid Wrench penetrating oil contained petroleum distillates  ("Deodorized Liquid Wrench").  It was packaged in varying sizes in drip, pour or squeeze cans as well as aerosol cans. Affidavit of Wells at ¶ 7.[4]

5.      The Deodorized Liquid Wrench formulation did not contain raffinate.  Affidavit of Wells at ¶ 7.

6.      Radiator ceased the sale and manufacture of raffinated-Liquid Wrench in 1978. Affidavit of Wells at ¶ 6 and Radiator business records at RSC 00010–11 (Exhibit "1" thereto.)

7.      Raffinated-Liquid Wrench could contain greater than 5% benzene.   Affidavit of Wells at ¶ 6 and Radiator business records at RSC 00014 and 16 (Exhibit "1" thereto.)

8.      In compliance with the FHSA and its predecessor, the Labeling Act, both deodorized and raffinated-Liquid Wrench had cautionary labels and warnings. Affidavit of Wells at ¶ 8 and Radiator business records at RSC PHOTOS 00001-3 and 00038 - 41 (Exhibit "2" thereto).

9.      The benzene-containing raffinated-Liquid Wrench bore the "skull & crossbones" symbol, which distinguished it from the Deodorized Liquid Wrench. Affidavit of Wells at ¶ 9 and Radiator business records at RSC PHOTOS 00001 - 3 and 00038 - 41 (Exhibit "2" thereto).

10.     The exact formula, ingredients or composition of either Deodorized or raffinated-Liquid Wrench prior to 1960 is unknown.  Affidavit of Wells at ¶ 5.

---

[4]      Mr. Wells, the former Vice President of Operations and current consultant to Radiator, indicated in his affidavit that he has seen pictures of Liquid Wrench cans which have the word "Deodorized" on the front of the can, but also have labeling and symbols indicative of the raffinate formula.  Affidavit of Wells at ¶ 7.

3

**B.**     **Raffinated-Liquid Wrench Tested by Foster Snell, Inc.**

11.     In approximately 1959, the United States Steel Corporation ("USS"), the raffinate vendor, sent a sample of raffinate to Radiator.  Affidavit of Wells at ¶ 10.

12.     USS also sent product specifications which indicated that the raffinate supplied to Radiator had 5% minimum benzene content. Affidavit of Wells at ¶ 11 and Radiator business records at RSC 00014 (Exhibit "1" thereto).

13.     In 1962, Radiator sought and obtained advice from a consulting firm, Foster Snell, Inc., which conducted scientific tests on a sample of Liquid Wrench to determine its toxicity for labeling in compliance with the Labeling Act.  Affidavit of Wells at ¶ 12 and Radiator business records  RSC 000138-144 (Exhibit "1" thereto).

14.     Foster Snell reviewed applicable federal laws and government regulations in order to determine if the Liquid Wrench formulation would be considered "toxic" or "hazardous."  Affidavit of Wells at ¶ 13 and Radiator business records at RSC 000138-144 (Exhibit "1" thereto).

15.     The report prepared by Foster Snell stated that Liquid Wrench would be a hazardous product as defined by the Federal Hazardous Substances Labeling Act and should be labeled in compliance with the Act.  Affidavit of Wells at ¶ 14 and Radiator business records at  RSC 000138-144 (Exhibit "1" thereto).

**C.**     **Raffinated-Liquid Wrench Complied with the Federal Hazardous Substances Act and Its Predecessor, the Labeling Act.**

16.     Radiator labeled mass-produced cans of raffinated-Liquid Wrench with the required label pursuant to the Federal Hazardous Substances Act and its predecessor, the Federal Hazardous Substances Labeling Act ("FHSA").  Affidavit of Wells at ¶ 15 and Radiator business records, RSC PHOTOS 00001-3 (Exhibit "2" thereto), and Consumer Product Safety Commission Circular, describing its policies and practices, Exhibit "C."

4

17.     Pursuant to the FHSA, Radiator placed the following warning on the front of cans of

Liquid Wrench which could contain greater than 5% benzene by weight:

> "DANGER—POISON,"
> "FLAMMABLE—VAPOR HARMFUL,"
> "HARMFUL OR FATAL IF SWALLOWED," and
> the "skull and crossbones symbol."

Affidavit of Wells at ¶ 16 and Radiator business records, RSC PHOTOS 00001-3 (Exhibit "2").

18.     On the back of cans of raffinated-Liquid Wrench, Radiator placed the following

cautionary labeling:

> "CAUTION—FLAMMABLE MIXTURE,"
> "DO NOT USE NEAR OPEN FIRE OR FLAME,"
> "CAUTION: Contains benzol.  Use only with adequate ventilation.  Avoid prolonged or
> repeated breathing of vapor and contact with skin.  Harmful if ingested.  Keep out of reach
> of children;" and
>
> "FIRST AID:  Call physician immediately if contacted with skin, wash thoroughly, for eyes
> flush gently 15 minutes.  Acute vapor exposure, immediately move to fresh air–keep quiet.
> If breathing has stopped, begin artificial respiration. If swallowed, do not induce vomiting."

Affidavit of Wells at ¶ 17 and Radiator business records, RSC PHOTOS 00001-3 (Exhibit "2"

thereto).

19.     In addition to the warning information, the label of raffinated-Liquid Wrench

featured the name and business address of Radiator Specialty Company, Charlotte, North Carolina.

Affidavit of Wells at ¶ 18 and Radiator business records, RSC PHOTOS 00001-3 (Exhibit "2"

thereto).

20.     The Consumer Product Safety Commission ("CPSC") required the foregoing

warnings on consumer products containing 5% benzene by weight because ". . . inhalation of the

vapors of products containing 5% or more by weight of benzene may cause blood dyscrasias." [5] 16 CFR 1500.14(b)(3)(i).

**D.** **Deodorized Liquid Wrench Complied with the FHSA and Its Predecessor, the Labeling Act.**

21.     Radiator labeled mass-produced cans of Deodorized Liquid Wrench with the required label pursuant to the FHSA and its predecessor, the Labeling Act.  Affidavit of Wells at ¶ 19 and Radiator business records, RSC PHOTOS RSC 00038-41 ("Exhibit "2" thereto).

22.     Pursuant to the FHSA, Radiator placed the following warning on the front of cans of Deodorized Liquid Wrench:

> "DANGER,"
> "HARMFUL OF FATAL IF SWALLOWED," and
> "READ CAUTIONARY DIRECTIONS CAREFULLY"

Affidavit of Wells at ¶ 20 and Radiator business records, RSC PHOTOS 00038 – 41 (Exhibit "2" thereto).  The cans also had the word "deodorized" on the front.  *Id.*

23.     On the back of cans of Deodorized Liquid Wrench, Radiator placed the following cautionary labeling:

> "CAUTION COMBUSTIBLE MIXTURE,"
>  "CAUTION: Contains Petroleum Distillate.  Avoid prolonged contact with skin or prolonged breathing of vapor.  Use with adequate ventilation.  If ingested, call a physician, do not induce vomiting."
> "KEEP AWAY FROM CHILDREN"

Affidavit of Wells at ¶ 21 and Radiator business records, RSC PHOTOS 00038-41 (Exhibit "2" thereto).

24.     In addition to the warning information on the labels, Deodorized Liquid Wrench featured the name and business address of Radiator Specialty Company, Charlotte. North Carolina.

---

[5]     Blood dyscrasia is a diseased state of the blood; usually refers to abnormal cellular elements of a permanent character."  Stedman's Medical Dictionary (27th ed. 2000).

1163775.5/004160.000331

Affidavit of Wells at ¶ 22 and Radiator business records, RSC PHOTOS 00038-41 (Exhibit "2" thereto).

25.     Neither raffinate nor benzene[6] was part of the formula for Deodorized Liquid Wrench.  Affidavit of Wells at ¶ 23.

26.     Deodorized Liquid Wrench bore the CPSC-required warning label with cautionary instructions.  Affidavit of Wells at ¶ 24 and Radiator business records, RSC PHOTOS  00038-41 (Exhibit "2" thereto).

27.     Plaintiffs have produced no evidence of the exact container(s) of Liquid Wrench Mr. Oakley allegedly used and the alleged warnings on these containers.   Moreover, co-worker testimony indicates that Mr. Oakley would not have read any warnings provided.  See Exhibit "I," Robert Burton Deposition at 88:11-23.and Exhibit "J," Lester Williams Deposition at 33:16-23.

**E.     Both Liquid Wrench Formulas Are Consumer Products as Defined by the FHSA.**

28.     The FHSA applies to consumer products which are "intended or packaged in a form suitable for use in the household."  15 U.S.C. § 1262(p).  Radiator distributed both raffinated and Deodorized Liquid Wrench formulas in interstate commerce to many states to hardware and auto parts stores, including stores such as Sears.  Affidavit of Wells at ¶ 25.

**F.     The CPSC's Authority**

29.     The CPSC's authority to regulate consumer products includes the power to ban those that are unreasonably dangerous.  15 U.S.C. 1263(a).  The CPSC has the power to ban benzene from consumer products, but has specifically chosen not to do so.  Consumer products containing 5% or more benzene require a specific warning while a different stronger warning must be placed

---

[6]     Benzene is a ubiquitous chemical produced by decaying organic matter, such as strawberries, found in the ambient air we all breathe, and is a component of other petroleum products.  Mineral spirits may have a trace amount of benzene, usually referred to as less than 0.1%, much like non-alcoholic beer is said to have less than 0.1% alcohol.

1163775.5/004160.000331

on consumer products containing 10% or more benzene.  The CPSC decision not to ban consumer products containing more than 10% means it is not "unreasonably dangerous," as a matter of law.

## III.   SUMMARY STATEMENT OF PLAINTIFFS' CLAIMS AGAINST RADIATOR

This is a toxic tort lawsuit originally filed against 11 Defendants, including Radiator, in which Plaintiffs allege that Robert Oakley contracted acute myelogenous leukemia ("AML") as a result of his exposure to benzene and benzene-containing products, including Liquid Wrench. See Exhibit 1, Plaintiffs' Third Amended Complaint.  No matter how Plaintiffs' claims are presented, they are warnings claims and, as such, preempted.

<u>Negligence</u>.  Plaintiffs allege that Radiator breached its duty to Mr. Oakley because it "*failed to use ordinary care by eliminating the benzene,*" from raffinated-Liquid Wrench. Plaintiffs' Third Amended Complaint, Count III, ¶ 42.  Plaintiffs' negligent failure to warn claim alleges that Radiator breached its duty by not adequately warning of the presence of benzene and the harm associated with benzene.  *Id.* at ¶ 48.

<u>Strict Liability.</u>  Plaintiffs' design defect product claim asserts that because raffinated-Liquid Wrench contained benzene, it was defective. *Id.* at Count V, ¶ 53.  Plaintiffs' failure to warn claim asserts that the Liquid Wrench label provided either no warning or an inadequate warning. *Id.* at Count V, ¶ 59.

<u>CPSA Breach</u>.  Plaintiffs claim that the raffinated-Liquid Wrench label violated the CPSA labeling requirements. *Id.* at Count VII, ¶¶ 63-75.

<u>Negligence *Per Se.*</u>  Plaintiffs assert that Radiator violated a regulation pursuant to the Occupational Safety and Health Act ("OSH Act"), commonly known as Hazardous Communication ("HAZCOM").  *Id.* at Count XIII., ¶ 109.

<u>Gross Negligence</u>.  Plaintiffs' negligence cause of action is predicated upon both  negligence and malice and inferentially asserts a violation of both the CPSA and HAZCOM. *Id at*  Count XII.

## IV.  THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  See  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Issues of material fact are "genuine" only if they require resolution by a trier of fact.  See *id*. at 248, 106 S. Ct. at 2510.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Id.*  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See *Anderson,* 477 U.S. at 255, 106 S. Ct. at 2513.

## V.  ARGUMENT AND AUTHORITIES

Plaintiffs' claims regarding Mr. Oakley's use of and exposure to any formula of Liquid Wrench penetrating oil are preempted by the FHSA and, if found to be applicable, the CPSA. Radiator had a duty to warn Mr. Oakley and fulfilled that duty by complying with federal law**.**  15 U.S.C. §§ 1261, *et seq*., and 15 U.S.C.  § 2051, *et seq.*

In *Moss v. Parks Corp.*, the Fifth Circuit Court of Appeals explained:

> "[I]n an area of limited Congressional preemption, such as the FHSA, a common law tort action based upon failure to warn may only be brought for non-compliance with existing federal labeling requirements. . . . To the extent the Plaintiff seeks warnings that are more elaborate or different from those issued by Congress and promulgated by the [Consumer Products Safety Commission] . . . the Plaintiff's claim is preempted."

985 F.2d 736 (4th Cir. 1993), *cert. denied,* 509 U.S. 906, 113 S. Ct. 2999 (1993).

The FHSA controls the warnings and directions for use for both formulas of Liquid Wrench. The FHSA specifically dictates the form and content of the labels.  As discussed herein, the FHSA preempts any state or common law claim seeking to impose different or more elaborate labeling

9

requirements than those established by the Act or by regulations promulgated under it.  Therefore, the FHSA preempts any state or common law claim challenging the adequacy of FHSA-compliant warnings.   At all times relevant in this litigation, Liquid Wrench complied with the labeling requirements established by the FHSA**.**  Because Plaintiffs' claims in this lawsuit directly and indirectly challenge the adequacy of Liquid Wrench's FHSA-compliant warnings, all of Plaintiffs' claims are preempted.

Plaintiffs' claim that raffinated-Liquid Wrench violated the CPSA labeling requirements fails because Section 2079(d) of the CPSA expressly provides that the FHSA applies in cases of overlap between the two statutes.  The CPSA does not apply to Liquid Wrench.  Moreover, even if the CPSA did apply, Plaintiffs' claims are preempted by the CPSA's preemption provision.

As a matter of law, Plaintiffs' reliance upon HAZCOM is misplaced because it took effect five (5) years after Radiator ceased making raffinated-Liquid Wrench.

**A.**      **FHSA and CPSC Regulations Apply to Liquid Wrench.**

Plaintiffs claim that Mr. Oakley's disease and death were a result of exposure to various products, including Liquid Wrench.  Liquid Wrench is manufactured, marketed, and labeled by Radiator.  Because Liquid Wrench is a CPSC-regulated substance "intended or suitable for household use," it is subject to the FHSA which, in turn, preempts any state or common law claim challenging the adequacy of FHSA-compliant warnings.  See 16 C.F.R. 1500.3(c)(10)(i).

Pursuant to 15 U.S.C. § 1261(f)(1), a "hazardous substance" subject to the FHSA is defined as follows:

> (A)  Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substances or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate route result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children, [or]

10

> (B)   Any substances which the Commission by regulation finds
> . . . meet the requirements of subparagraph 1(A). . . .

16 CFR 1500.3 (b)(4)(i).

Accordingly, pursuant to the FHSA, a substance may be classified as "hazardous" by virtue of a particular property, such as toxicity or flammability, or by being specifically denoted as such by a regulation promulgated by the Consumer Products Safety Commission.   Plaintiffs are in agreement that both raffinated and Deodorized Liquid Wrench are subject to the FHSA under those standards.   15 CFR § 1500.14(b)(3).

### B.      The Liquid Wrench Label Complied with FHSA Requirements

Under the FHSA, once a substance is classified as a hazardous substance, its label must conform identically with the labeling requirements in the Act and its accompanying regulations. Otherwise, it is deemed a "misbranded hazardous substance," and the introduction of the substance into interstate commerce is prohibited.   15 U.S.C. §§ 1261(b), 1261(p), 1263(a); 16 CFR § 1500.3 (b)(14).

The Liquid Wrench[7] allegedly used by Mr. Oakley was a hazardous substance intended or packaged in a form suitable for use or storage in or around households and was available for purchase in retail stores.   Under the statutory scheme, Radiator lacked any discretion in deciding whether to include particular warnings, instructions, or directions for use on its Liquid Wrench labels.   The FHSA mandates the specific language to be included on the label.   To vary, add, or delete language from the label would defeat the uniform labeling goals of the FHSA and make Liquid Wrench a "misbranded" product.   15 U.S.C. § 1261(p)

Pursuant to the FHSA, a label for a hazardous substance must state conspicuously:

---

[7]      Plaintiffs have not established which Liquid Wrench penetrating oil formulation that Mr. Oakley allegedly used.

"(A) The name and place of business of the manufacturer, packer, distributor or seller; (B) the common or usual name or the chemical name (if there be no common or usual name) or the hazardous substance of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires use of a recognized generic name; (c) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," "Absorbed Through Skin," or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when not applied by regulation of the Commission pursuant to section 1262 of this title; (G) instruction, when necessary or appropriate, for first aid treatment; (H) the word "poison" for any hazardous substance which is defined as "highly toxic" by subsection (h) of this section; (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement (i) "Keep out of reach of children" or its practical equivalent . . . ."

U.S.C. § 1261(p)(1); see also 16 CFR § 1500.3(b)(14)(i). These elements must appear in the English language and be prominently placed on the label. 15 U.S.C. § 1261(p)(2); see also 16 CFR § 1500.3(b)(14)(ii). In addition, they must be "in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label." *Id.* Section 1261(b)(1) labeling requirements have remained the same since the enactment of the FHSA in 1960.

For products containing greater than 5% or 10% benzene by weight, additional cautionary labeling is required:

". . . Products containing 5 percent or more by weight of benzene shall be labeled with the signal word 'Danger,' the statement of hazard 'Vapor harmful,' the word 'Poison,' and the 'skull and crossbones symbol. If the product contains 10 percent or more by weight of benzene, it shall bear the additional statement of hazard "harmful or fatal if swallowed" and the additional statement "call physician immediately. "" (*emphasis added*).

16 CFR § 1500.14(b)(3)(i).

In compliance with the FHSA, Radiator placed the following warnings on raffinated-Liquid Wrench which could contain greater than 5% benzene by weight:

"DANGER—POISON,"
"FLAMMABLE—VAPOR HARMFUL,"
"HARMFUL OR FATAL IF SWALLOWED," and

12

the "skull and crossbones symbol."[8]

"CAUTION: Contains benzol.  Use only with adequate ventilation.  Avoid prolonged or repeated breathing of vapor and contact with skin.  Harmful if ingested.  Keep out of reach of children;" and

"FIRST AID:  Call physician immediately if contacted with skin, wash thoroughly, for eyes flush gently 15 minutes.  Acute vapor exposure, immediately move to fresh air –keep quiet.  If breathing has stopped, begin artificial respiration. If swallowed, do not induce vomiting."

Affidavit of Wells at ¶ 17 and Radiator business records, RSC PHOTOS 00001-3 (Exhibit "2" thereto).

In compliance with the FHSA, Radiator placed the following language and warnings on Deodorized Liquid Wrench which did not contain greater than 5% benzene by weight:

"DEODORDIZED,"
 "DANGER,"
"HARMFUL OF FATAL IF SWALLOWED,"  and
"READ CAUTIONARY DIRECTIONS CAREFULLY"

"CAUTION: Contains Petroleum Distillate.  Avoid prolonged contact with skin or prolonged breathing of vapor.  Use with adequate ventilation.  If ingested, call a physician, do not induce vomiting."
"KEEP AWAY FROM CHILDREN"

Affidavit of Wells at ¶ 21 and Radiator business records, RSC PHOTOS 00038-41 (Exhibit "2" thereto).

As demonstrated above, both formulas of Radiator's consumer product, Liquid Wrench, were properly labeled and contained all warnings required by the CPSC. (Note Plaintiffs have produced no evidence of the warnings on containers of Liquid Wrench actually used by Mr. Oakley.)   Accordingly, raffinated and Deodorized Liquid Wrench warnings were adequate as a matter of law.  Plaintiffs' claims are preempted under the FHSA because they are seeking to impose common law requirements for cautionary labeling and warnings which are different than the FHSA labeling requirements.

---

[8]     16 CFR 1500.14(b)(3)(i).

**C.** **Five U.S. District Courts Find Liquid Wrench Claims Preempted.**

Numerous federal district courts have found that a plaintiff's "failure to warn" and other common law tort causes of action asserted in similar cases involving Liquid Wrench are preempted. These opinions are discussed below.

Attached as Exhibit "D" is a copy of a decision by Judge Clark, United States District Court, Eastern District of Texas, finding preemption in a Liquid Wrench case, *David Randall Drake v. Radiator Specialty Co., et al*, Civil Action No. 1:03-CV-01349 (E.D. Tex. 2004).

Attached as Exhibit "E" is a copy of a decision by Judge Starrett holding that "Congress intended for federal law by way of the FHSA as applied by the CPSC to preempt state or common law on such issues." *Fowler, et al v. First Chemical Corporation, et al*, Civil Action No. 2:05-CV-000026-KS-JMR, at 9 (S.D. Miss. 2005).

Attached as Exhibit "F" is a copy of an Order granting Radiator's Motion for Summary Judgment in a similar case involving Liquid Wrench, and attached as Exhibit "G" is a copy of the transcript of the hearing in which Judge Miller explained his reasoning. *C. Bruce Rideout v. Safety-Kleen Corp.*, Civil Action No. 2:03-CV-00634 (S.D. Va. 2004).

Attached as Exhibit "H" is a copy of a decision by Judge Froeschner agreeing with the Fourth Circuit in *Moss* that "the FHSA preempts any state or common law claims that seek to impose labeling requirements different from the requirements found in the statute or regulations promulgated thereunder." *Troy Leon Lucas, et al v. Radiator Specialty Co., et al,* Civil Action No. 3:05-CV-00623, at 1 (S.D. Tex. 2006).

All of the foregoing opinions dealt directly with Liquid Wrench in cases virtually identical to this case.  Radiator requests that this Court take judicial notice of the opinions and the findings of fact in *Drake, Rideout, Fowler,* and *Lucas* with respect to preemption under the FHSA.

Radiator's analysis regarding preemption is consistent with decisions of the United States Supreme Court, the United States Fourth and Fifth Circuit Court of Appeals, the United States District Court for the Eastern District of Texas, the United States District Court for the Southern District of Texas, the United States District Court for the Eastern District of Virginia, the United States District Court for the Southern District of Mississippi, and the highest courts of law in Texas, Mississippi and Illinois.

Liquid Wrench was subject to and in compliance with the cautionary label requirements mandated by the FHSA and its implementing regulations. See Section IV.F.4. Plaintiffs' claims directly or indirectly seek to challenge the adequacy of Liquid Wrench's FHSA-compliant warnings and are, therefore, preempted. Accordingly, all of Plaintiffs' claims against Radiator fail as a matter of law, and Radiator is entitled to a summary judgment on all counts.

### D.  The CPSA Inapplicable by Its Own Terms.

Plaintiffs incorrectly assert that the CPSA sets the standard for labeling of raffinated-Liquid Wrench. See Plaintiffs' Third Amended Complaint, ¶ 65-68; 70; and 74-76. The  following CPSA provision directly negates such an interpretation:

*       *       *       *       *       *

"(d) Regulation by Commission [CPSC] of consumer products in accordance with other provisions of law

**A risk of injury which is associated with a consumer product** and which could be eliminated or reduced to a sufficient extent by action under the Federal Hazardous Substances Act [15 U.S.C.A. § 1261, *et seq.*], the Poison Prevention Packaging Act of 1970 [15 U.S.C.A. § 1471, *et seq.*], or the Flammable Fabrics Act [15 U.S.C.A. § 1191 et seq.] **may be regulated under this chapter only if the Commission by rule finds that it is in the public interest to regulate such risk of injury under this chapter.** Such a rule shall identify the risk of injury proposed to be regulated under this chapter and shall be promulgated in accordance with section 553 of Title 5 . . ."

Section 2079 (d).[9] (emphasis added).  Based upon the preceding language, the FHSA sets the standard for labeling raffinated-Liquid Wrench, not the CPSA.  The Commission has not found by rule that it is in public interest to regulate such risk of injury under this Chapter.

In 2008, Section 2079(d) of the CPSA was repealed in HR 4040 which was enacted into law in August 2008.  By its very terms, the repeal of this provision does not operate retroactively but instead applies only after its passage date.  Because Plaintiffs assert that their cause of action arose within two years of the filing of the Original Complaint, the repeal of Section 2079 (d) does not apply.

> **E.** **Federal Law Preempts Any State or Common Law Claim Challenging the Adequacy of Warnings Compliant with the Federal Hazardous Substances Act and, if Found to be Applicable, the Consumer Product Safety Act.**
>
> **1.** **The Doctrine of Preemption.**

The doctrine of preemption arises out Article VI, clause 2 of the Constitution, otherwise known as the Supremacy Clause, which provides that "[t]his Constitution and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.  Where a Congressional intent to preempt is expressly stated, state law must yield to Congressional command.  See *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992). [10]  Express preemption is generally found where statutory language expressly provides for

---

[9]      The foregoing passage from the CPSA was cited by the District of Colombia Circuit Court in *Forester v. Consumer Product Safety Commission,* 559 F.2d 774, 784 (D.C.Cir. 1977).  This was an administrative appeal from a rule-making proceeding where the court, in passing, discussed the possibility of an overlap between the CPSA and the FHSA.  In its ruling the court noted that any real or perceived overlap in the CPSA and the FHSA was resolved in favor of applying the FHSA, by the foregoing CPSA provision, stating in a footnote that: "[t]hus the Commission [CPSC] was without power to regulate such products under the CPSA when it reasonably concluded that the hazards could adequately be controlled by action under the FHSA" *Id.,* at 784.

[10]      In *Cipollone*, the Supreme Court addressed the similar preemption provision under the Public Health Cigarette Smoking Act of 1969.  The specific language of the preemption provision of that statute stated, "[N]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion (continued on next page)

preemption of state or common law.  Implied preemption occurs when a statute does not contain express preemptive language, but its structure signals a congressional intent to displace common law.

### 2.      Preemption Under the Consumer Product Safety Act.

Even if the Consumer Product Safety Act applies, Plaintiffs' claims are preempted.  The CPSA  includes a preemption provision which provides:

> Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, **no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation** which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, **unless such requirements are identical to the requirements of the Federal standard.**

*Id.*, § 2075(a).  (emphasis added).

This language establishes Congress' intent to preempt any requirements that are not identical to the requirements of the federal standard. The prohibition against competing requirements applies even if the requirement is found in state legislation, regulations, or the use of the judiciary to enforce common law rules which purport to set standards contrary to federal law. See *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999, 169 L.Ed.2d 892 (2008), *Moss*, 985 F.2d at 739-40. (The U.S. Supreme Court's opinion in *Riegel* is analyzed in detail in Section III.E.4 *infra*).

The CPSA also contains a saving clause which provides that "[c]ompliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person." *Id.*  at § 2074(a).  The United States Supreme Court considered the effect of saving clauses on  preemption provisions and concluded that  the  saving  clause  did  "not bar  the  ordinary  working  of  conflict  pre-emption

---

of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." *Id.* at 522; 15 U.S.C. §1334(b) (1982).

principles." *Geier v. American Honda Motor Co.,* 529 U.S. 861, 869-73, 120 S. Ct. 1913, 146 L.Ed.2d 914 (2000).  The mere presence of a saving clause would not permit tort claims in actual conflict with federal regulations *Id.*  If the claim conflicts with federal regulations, it is still preempted. *Id.* at 872, 120 S. Ct. 1913.

Recently, the Texas Supreme Court analyzed the interplay between the CPSA's preemption provision and savings clause in *Bic Pen Corp. v. Carter,* 251 S.W.3d 500 (Tex. 2008). The Court concluded that the CPSA saving clause "allows state-law tort claims, but does not permit claims that actually conflict with the federal regulations." *Id. at 506.*  Relying on the U.S. Supreme Court's opinions in *Riegel* and *Geier,* the court then held that the CPSA preempted common law design defect claims. *Id.*

The Mississippi Supreme Court reached a similar conclusion regarding preemption of state law under the CPSA. *Frith v. BIC Corp.,* 863 So.2d 960 (Miss. 2004).  Mississippi's highest court cogently reviewed the applicable federal statute, found a Congressional intent to preempt state laws, and held that plaintiff's state common law claims were preempted by the CPSA. *Id.* at 964–67.

Here too, Plaintiffs' claims for violations of the CPSA (if found to even apply) including negligence, strict liability and gross negligence are preempted because they seek to impose cautionary labeling and warnings requirements which are different that the federal labeling requirements.

### 3.      Preemption Under the Federal Hazardous Substances Act. [11]

The FHSA was enacted in 1960 by Congress to "provide a nationally uniform requirement for adequate cautionary labeling of packages of hazardous substances which are sold in interstate

---

[11]      The U.S. Supreme Court in *Riegel v. Medtronic*, 128 S. Ct. 99 (2008), and *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240 (1996), considered a similar question to the one presented in this Motion for Summary Judgment. Although the preemption language found in the Medical Device Amendments of 1976 ("MDA") is different than the preemption language at issue in this case, the Supreme Court's analytical framework must be employed in this case. These cases  require a review of the structure and purpose of the statute as a whole, including the labeling preemption provision, in the context of the statutory scheme.  *Medtronic,* 518 U.S. at 486, 116 S. Ct. at 2251.

18

commerce and are intended or suitable for household use."  House Comm. on Interstate and Foreign

Commerce, H.R. Rep. No. 1861 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2833, 2833. Although the

FHSA, as enacted, did not contain an express preemption section, Congress subsequently amended

the Act in 1966 to preempt state law:

> "[If] a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [15 U.S.C. §§ 1261(p) or 1262(b)] designed to protect against a risk of illness or injury associated with a substance, *no State . . . may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b)[15 U.S.C. §§ 1261(p) or 1262(b)].*

15 U.S.C. § 1261, note Effect upon Federal and State Law (b)(1)(A) (emphasis added).

This passage makes clear the Congressional intent to preempt the field of labeling

requirements and to prevent states from attempting to enact legislation, promulgate regulations, or

allow a common law fact finder to determine the "reasonableness" of a consumer product label on a

hazardous substance-containing consumer product.  It is equally clear that the foregoing preemption

language establishes a Congressional intent to prohibit the states from unilaterally entering this

field.  No other meaning could be ascribed to the words " . . . no state . . . may establish or continue

in effect a cautionary labeling requirement . . . unless such cautionary labeling requirement is

identical to the labeling requirement under section 2(p) or 3(b)."  15 U.S.C. § 1261, note Effect

upon Federal and State Law (b)(1)(A).  This prohibition against state competing requirements holds

no matter if the source of the requirement is found in legislation, regulations, or the use of the

judiciary to enforce common law rules which purport to set standards contrary to federal law. [12]

See *Riegel v. Medtronic, Inc.,* 128 S. Ct. 999, 169 L.Ed.2d 892 (2008), *Moss*, 985 F.2d at 739-40.

---

[12]     There is limited opportunity for states to draft laws more stringent than the FHSA, but any such laws must be approved by the CPSC.  The FHSA describes the exact procedures a state must take in order for those more stringent provisions to become valid and free from preemption.  A state that fails to obtain the exemption may not enforce such stricter requirements. the State of Texas has not made an application to the CPSC seeking an exemption for its statutes, (continued on next page)

Accordingly, the preemption provision of the FHSA precludes any plaintiff from bringing state and common law tort claims challenging the adequacy or sufficiency of FHSA-compliant warnings, precautions, directions for use, and other instructional information provided to a hazardous substance product user.  Preemption requires the finding that no cause of action can be based upon a common law failure to warn claim.

**4.      U.S. Supreme Court Finds Preemption in *Riegel v. Medtronic*.**

The United States Supreme Court's most recent case on preemption is in agreement. *Riegel v. Medtronic, Inc.,* 128 S. Ct. 999 (2008).  In *Riegel,* the court held that the plaintiff's state common law claims were preempted by the Medical Device Amendments ("MDA").  The MDA, like the FHSA and CPSA, contains a preemption provision.  The MDA provides that a state shall not "establish or continue in effect with respect to a device intended for human use any requirement- . . . (1) which is different from, or in addition to, any requirement applicable under [federal law] to the

---

regulations, and/or common law rules.  Because Texas statutes, regulations, and common law rules have not received a CPSC exemption which would allow them to impose more stringent requirements than those found in the CPSC regulations, Texas law does not support Plaintiffs' claim for relief against Radiator.  See the following statutory language:

(3) (A)  Upon application of a State or political subdivision of a State, the Commission may, by regulation promulgated in accordance with subparagraph (B), exempt from paragraph (1), under any such conditions as may be prescribed in such regulation, any requirement of such State or political subdivision designed to protect against a risk of illness or injury associated with a hazardous substance if

(i)      compliance with the requirement would not cause the hazardous substance (or its packaging) to be in violation of the applicable requirement described in paragraph 1, and

(ii)      the State or political subdivision requirement (I) provides a significantly higher degree of protection from such risk of illness or injury than the requirement in paragraph 1, and

(iii)     does not unduly burden interstate commerce.

In determining the burden, if any, of a State or political subdivision requirement on interstate commerce the Commission shall consider and make appropriate (as determined by the Commission in its discretion) findings on the technological and economic feasibility of complying with such requirement, the geographic distribution of the substance to which the requirement would apply, the probability of other States or political subdivisions applying for an exemption under this paragraph for a similar requirement, and the need for a national, uniform requirement under this Act [this chapter] for such substance (or its packaging).

15 U.S.C. §1261, note Effect on Federal and State Law (b)(3)(A) (emphasis added).

device, and . . . (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under" relevant federal law.  21 U.S.C. § 360k(a).

The Supreme Court held that state common law claims are preempted because they are based on "requirements" that are "different from or in addition to" the federal ones that relate to safety and effectiveness.  *Riegel* at 1007-1011.  When considering the policy behind preempting common law claims, the court reasoned "[s]tate court law that requires a manufacturer's catheters to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect." *Id.* at 1008.  The court held that the plaintiff's claims regarding the strict liability, breach of warranty, negligent design, labeling, inspection, marketing, distribution and manufacture were preempted. *Id.* at 1005, 1011.

The *Riegel* analysis is likewise applicable here. See *id.* at 1002. Both the MDA provisions in *Riegel* and the FHSA and CPSA provisions at issue concern conflicting state law "requirements." Under the FHSA, CPSA and MDA, states cannot "establish or continue in effect" "requirements" which are "different from or in addition to" (MDA) or not "identical to" (FHSA and CPSA) the federal requirements.  The FHSA and CPSA language is even stronger than the MDA language because the state requirements must be "<u>identical to</u>" the federal requirements.   As in *Riegel,* Plaintiffs' claims are preempted under the FHSA  and CPSA (if applicable) because they are seeking to impose common law requirements for cautionary labeling and warnings which are different that the FHSA  and CPSA  requirements.

**5.    Congressional  Intent to Preempt.**

Although the preemption provision in the FHSA was not added until 1966, from the inception of the Act, Congress made its intent to preempt non-identical state and  common law claims regarding warnings or labeling claims clear.  The 1960 Federal Hazardous Substances

Labeling Act's[13] legislative history provides the following declaration of congressional intent showing that it was intended to:

> ". . . provide a nationally uniform requirement for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are Intended or suitable for household use."

House Comm. on Interstate and Foreign Commerce, H.R. Rep. No. 1861 (1960), *reprinted in* 1960 U.S.C.CAN. 2833.   This legislative history, together with the all-encompassing structure of the Act described below justifies a finding of Congressional intent to preempt.

The structure of the FHSA/CPSC evidences intent to preempt state and common law.  The CPSC uses science and technology to define and categorize consumer products by their individual hazardous ingredients (*e.g.,* benzene), or hazardous properties (*e.g.,* flammability).  After a technical inquiry[14] and a due process style evidentiary public hearing,[15] the CPSC may issue a regulation[16] requiring that a product bear a specified warning label.[17]  Interested parties may appeal to a federal court.[18]  If the CPSC decides that the product is no longer unreasonably dangerous with a proper warning label, it will promulgate a regulation requiring a specific warning label,[19] as it did with regards to benzene content. 16 CFR 1500.14(b)(3)(i-ii).  The foregoing powers are exclusive to

---

[13]     The Federal Hazardous Substances labeling Act is the predecessor to the Federal Hazardous Substances Act.

[14]     15 U.S.C. 2054 and 15 U.S.C 1270.

[15]     15 U.S.C. 1262 (a) (2).

[16]     15 U.S.C. 1262 (h-i) ( all such proposed and final regulations must be published in the Federal Register).

[17]     15 U.S.C. 1261 p.

[18]     15 U.S.C. 1262 (i) (judicial review of CPSC regulation).

[19]     15 U.S.C. 2051 (b) and 15 U.S. 1262 (a); *see, e.g.,* required warnings on products containing 5% benzene by weight 16 C.F.R. 1500.14 (b) (3) (i).

the CPSC under the FHSA. Violation of the Act or regulations subjects a person to fines and/or imprisonment.[20]  Litigation over the Act and regulations is subject to federal jurisdiction.[21]

The CPSC regulatory program promulgates standardized warning labels based upon technology and science, thereby allowing manufacturers to ship their product to each state in the union with the knowledge that it has fulfilled its legal duty to warn.[22]  CPSC regulations are preemptive, and they abrogate a state-by-state patchwork quilt of varying duties to warn, in effect prohibiting individual states from establishing or continuing in effect laws that "frustrate or interfere with" the regulatory program, or if such state law ". . . stands as an obstacle to the accomplishment and execution of the full purpose of Congress."[23]

The Congressional intent to impose a nationwide and uniform set of regulations and the all-encompassing nature of the regulations suggests an intent, by implication, to preempt contrary state laws.  Accordingly, the preemption provision of the FHSA and its predecessor, the Labeling Act, precludes any plaintiff from bringing state law tort claims challenging the adequacy or sufficiency of FHSA/FHSLA-compliant warnings, precautions, directions for use, and other instructional information provided to a hazardous substance product user.

6.     **Nationwide Federal and State Case Law Find Preemption Under  FHSA, CPSA and Similar Statutes**

Since *Cipollone*, all federal circuit courts of appeal that have addressed the issue have concluded that the FHSA preempts any state or common law claim that seeks to impose more

---

[20]      15 U.S.C.

[21]      15 U.S.C 1267 (federal jurisdiction); 1262-63; (enforcement by U.S.); 1265 (e) (removal of state Attorney General *parens patriae* suits).

[22]      If it were otherwise, a product with a North Carolina-compliant label that is purchased in that state, but used in another state with a different warning label requirement, would subject the manufacturer to litigation for failing to follow the state warning law where the product was used.  Plaintiffs' lawsuit, if successful, would accomplish that patchwork quilt of responsibility that Congress expressly sought to prohibit.

[23]      *People, ex rel. Lockyer v. Tri-Union Seafood, LLC,* (2006) Cal. Sup 2006 WL 1544384, page 56.

elaborate or additional labeling requirements than those mandated by the FHSA and its implementing regulations.   See*, e,g,. Moss v. Parks Corp.*, 985 F.2d 736 (4th Cir. 1993), *cert. denied,* 509 U.S. 906, 113 S. Ct. 2999 (1993); *Comeaux v. National Tea Co.,* 81 F.3d 42, 44 (5th Cir. 1996); *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 109 (2nd Cir. 2001); *Hunnings v. Texaco, Inc.*, 29 F.3d. 1480, 1488 (11th Cir. 1994), *later appeal*, 166 F.3d 351 (11th Cir. 1998); *Pennsylvania Gen. Ins. Co. v. Landis*, 96 F. Supp 2d. 408, 414-15 (D. N.J. 2000), *aff'd*, 248 F.3d 1131 (3rd Cir. 2000); *Kirstein v. W. M. Barr & Co.,* 983 F. Supp. 753, 761 (N.D. Ill. 1997), *aff'd*, 159 F.3d 1065 (7th Cir. 1998).   In addition, the supreme and appellate courts of other states have also embraced preemption, as have other federal district courts in decisions too numerous to warrant individual citation. *See e.g. Coffey v. Minwax, Co.*, 764 A.2d 616 (Pa. Super. Ct. 2000); *Gurrieri v. William Zinsser & Co.*, 728 A.2d. 832 (N.J. Super. Ct. App. Div. 1999); *Runningen v. American Empire Surplus Lines Ins. Co.*, 592 N.W.2d 319 (Wis. Ct. App. 1999); *Lopez v. Hernandez*, 676 N.Y.S.2d 613 (App. Div. 1998); *People ex rel. Lungren v. Cotter & Co.*, 62 Cal. Rptr. 2d 368 (Ct. App. 1997); *Busch v. Graphic Color Corp.*, 662 N.E.2d 397 (Ill. 1996); *Canty v. Ever-Last Supply Co.*, 685 A.2d 1365 (N.J. Super. Ct. Law Div. 1996); *Salazar v. Whink Prods. Co.*, 881 P.2d 431 (Colo. Ct. App. 1994); *State ex rel. Jones Chems., Inc. v. Seier*, 871 S.W.2d 611 (Mo. Ct. App. 1994); *Jenkins v. James B. Day & Co.*, 634 N.E.2d 998 (Ohio 1994).

The preemptive effect of the FHSA was specifically addressed in *Comeaux v. National Tea Co.,* 81 F.3d 42 (5th Cir. 1996).   The Fifth Circuit held that state law-based product liability claims for defective warning were preempted by the FHSA.   Moreover, the Court found that labeling requirements imposed by the FHSA may not be supplemented or augmented by state law.   *Id*. at 43-44.   In *Comeaux,* a little boy who was burned when lighter fluid ignited brought a Louisiana statutory products liability "failure to warn" lawsuit alleging that the lighter fluid warning was inadequate.   *Id.* The defendant argued in its summary judgment motion that naphtha lighter fluid

was not unreasonably dangerous under the Louisiana products liability act, and that its warnings complied with the FHSA and with CPSC regulations.  *Id.*  The Fifth Circuit found preemption, ruling that lighter fluid was subject to the FHSA and that the warnings fully complied with the FHSA and with CPSC regulations.  *Moss,* 985 F.2d at 740-41.

In *Chemical Specialties Manufacturers' Assoc. v. Clark,* the Fifth Circuit held the Federal Hazardous Substances Labeling Act expressly supersedes any state or local "precautionary labeling" law "which differs from the requirements or exemptions of this Act or the regulations or interpretations promulgated pursuant thereto" and was intended to preempt regulation of all labeling of hazardous substances covered by such Act.  482 F2d 325 (5th Cir. 1973).   In finding that the Dade County regulation was preempted, the Fifth Circuit per curium decision first described the FHSA and the express preemption provision and noted the legislative history.  H.R. Rep. No. 2166, 89th Cong. 2d Sess. 6, U.S. Code Cong. & Admin News 1966, p. 4095, 4100 (1966).  The Court noted that the law was passed to ". . . free marketers of products sold interstate from the impractical an unnecessary burden of labeling each such products specially to comply with the requirements developed by States and cities. . . ."

The Texas Supreme Court in *Quest Chemical Corp. v. Elam,* 898 S.W.2d 819 (Tex. 1995), addressed a similar preemption provision in the Federal Insecticide Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. 136vb.  The Texas Supreme Court held that all state common law tort suits based on claims directly or indirectly related to labeling were preempted, including strict liability and breach of warranty.  *Id.* at 44.

In *Busch v. Graphic Color Corp.*, 169 Ill.2d 325, 662 N.E.2d 397, *cert. denied, Busch v. AMREP, Inc.*, 519 U.S. 810, 117 S. Ct. 55 (1996), the plaintiff's decedent died as a result of inhalation of methylene chloride after using "Misty Paint Stripper" manufactured by defendant AMREP.  The Illinois Supreme Court, applying *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112

S. Ct. 2608, 120 L. Ed. 407 (1992), construed the FHSA's preemption provision as precluding common law tort causes of action that seek to impose cautionary labeling requirements different from the FHSA so long as the competing state law was designed to protect against the same risks of illness or injury as those covered by the FHSA. *Busch*, 662 N.E.2d at 406. The defendant's product label was virtually identical to the CPSC exemplar. The plaintiff sought a common law ruling requiring a label warning that was not identical to the 15 U.S.C. § 1261(p)(1) label warnings. The Illinois Supreme Court ruled that the plaintiff's failure to warn claim was preempted. Confronted with the exact question presented in the case at bar, the Illinois Court recognized that the FHSA and the CPSC regulations have totally occupied the warning field, ruling that there is no state common law cause of action in Illinois for a failure to warn or to provide instructions concerning the safe use of a hazardous consumer product that is governed by the FHSA and by the CPSC regulations. *Id.*

### 7.     Other State or Common Law Actions Are Preempted

Preemption under the FHSA and/or CPSA is not limited to claims that are expressly labeled as "failure to warn" claims. Also preempted is any claim, however styled, which impacts on an alleged failure to warn if success in the claim would implicitly impose a warning requirement different from those mandated by the Acts  See *Riegel* at 1007-10011 (strict liability, breach of implied warranty and negligent design, testing, inspection, marketing, distribution, labeling, and sale, and manufacturing claims preempted); and *Miles v. S.C. Johnson & Sons, Inc.,* 2002 WL 31655188, at *6-8 (N.D. Ill. 2002) (breach of warranty or merchantability in strict liability claims preempted because success on those claims would impose different requirements than those mandated by the FHSA). Indeed, the Supreme Court commands that the preemptive force of federal statutes may not be evaded by clever pleading tactics. *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 324 (1981) ("[C]ompliance with the intent of Congress cannot be avoided by mere artful pleading.").

A trial court and jury may not pass on the reasonableness of federally-required warnings: "Analyzing the performance of an expert regulatory agency such as EPA, however, is not a function of this court, and furthermore, is irrelevant to the preemption analysis." *Taylor AG v. PURE-PRO Corp.* 54 F.3d 555, 561 (9th Cir 1995) *citing, Mattoon v. City of Pittsfield*, 980 F.2d 1, 5 (1st Cir. 1995). To do so would amount to a "veto" of those very CPSC regulations requiring the specific warnings. *Id.*

### F.    HAZCOM Promulgated After Raffinated-Liquid Wrench Discontinued

Plaintiffs' negligence *per se* claim asserts that Radiator violated a portion of the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. 15 *et seq.* and its regulations, which were promulgated and enforced by the Occupational Safety and Health Administration ("OSHA"). Plaintiffs' Third Amended Complaint, Count XIII., ¶106. The gist of the allegation is that Radiator failed to provide an MSDS to Mr. Oakley's employers, or submitted a non-compliant one under 29 CFR 1910.1200, *et seq.* Hazardous Communication ("HAZCOM").

On November 25, 1983, the Department of Labor published a Preamble and the Final Rule. 29 CFR 1910.1200, 48 FR 53340, *et seq.* The undisputed fact is that Radiator ceased manufacturing raffinated-Liquid Wrench in the spring of 1978, five years prior to the regulation. Prior to 1983 Radiator had no legal duty to provide an MSDS in the context of Mr. Oakley's use. See 48 FR 53305 (prior to 1983 production of an MSDS was "primarily a voluntary action since MSDSs are only required under OSHA standards in the maritime industry).

### VI.   SUMMARY JUDGMENT EVIDENCE

This Motion for Summary Judgment is based on the pleadings on file with the Court, as well as a true and correct copy of the evidence attached hereto and incorporated herein by reference. See Appendix attached hereto.

## VII.  CONCLUSION

Because the FHSA provides the standard for an appropriate warning, and because the label on Liquid Wrench complied with the standard, Plaintiffs cannot challenge the adequacy of the warnings on the Liquid Wrench product label.   Regardless of how Plaintiffs characterize their claims, at the heart of each and every allegation supporting their claim is a challenge to the adequacy of the warnings provided regarding the use of the Liquid Wrench product. [24]   Because their claims seek to impose warnings not required by the FHSA, the claims are expressly preempted, and Radiator is entitled to summary judgment in its favor.

Negligence.   Plaintiffs' negligence claim is preempted by the FHSA and, if found to apply, the CPSA.  Plaintiffs' negligence claim is premised upon a purported duty to "eliminate benzene" from raffinated-Liquid Wrench and a failure to warn regarding the presence of and the effect of benzene in raffinated-Liquid Wrench.   The FHSA/CPSC regulations, as a matter of law, did not ban benzene between 1960 and 1978, and still today they have not banned benzene from any consumer product, even though the CPSC has authority to ban any hazardous consumer product if it believes that it is "unreasonably dangerous."  Instead, the regulations require product manufacturers to place a specific warning label on the container.  Radiator has complied with that duty.

Plaintiffs' assertion that Radiator negligently warned fails because the FHSA preempts and abrogates any state or common law that impose a duty to warn that is different from the duty as set forth in CPSC regulations.  Plaintiffs have produced no evidence of the language used to convey the warning on the container(s) of Liquid Wrench Mr. Oakley allegedly used and, without such evidence, no trier of fact can determine that Radiator negligently warned.  The undisputed evidence

---

[24]    Note there is no evidence that Mr. Oakley used rafffinated-Liquid Wrench.  Even if one assumes Mr. Oakley actually used raffinated-Liquid Wrench, there is no evidence that 5% benzene rendered it an "unreasonably dangerous" consumer product.  Moreover, there is no evidence that the warning on any can of Liquid Wrench allegedly used by Mr. Oakley failed to contain the required warning specified by 16 CFR 1500.14)b)(3).

shows that Radiator complied with the objective CPSC regulations requiring certain warnings on consumer products containing benzene.  Thus, Radiator did not breach any duty to Mr. Oakley.

Strict Liability.  Plaintiffs' design defect and marketing defect claims are preempted by the FHSA and, if found to apply, the CPSA.  The design defect claim fails because the FHSA and CPSA regulations have never banned benzene from use in consumer products.  The marketing defect or failure to warn claim also fails.  Plaintiffs have produced no evidence of warnings on the container(s) of Liquid Wrench Mr. Oakley allegedly used and, without such evidence, no trier of fact can determine that there was no warning or, in the alternative, that the warning was defective. Radiator, on the other hand, has produced evidence that the warnings on Liquid Wrench complied with federal law.

CPSA Breach.   Plaintiffs' CPSA breach claim fails because Section 2079(d) of the CPSA expressly provides that the FHSA, rather than the CPSA, applies in cases of overlap.  Because the CPSA does not apply to Liquid Wrench, it does not apply to this lawsuit, and Radiator had no duty to comply with it.  Even if the CPSA is found to apply, the CPSA like the FHSA, preempts Plaintiffs' claims.  Moreover, the CPSA violation claim fails because Plaintiffs offered no evidence of the warning on the container(s) of Liquid Wrench he allegedly used.

Gross Negligence.  As shown above, there is no evidence that Radiator was negligent in manufacturing of a product containing approximately 5% benzene between the early 1960's and 1978 or of negligent failure to warn.  There being no negligence, there can be no finding of gross negligence or malice.

Negligence *Per Se* and HAZCOM.  Plaintiffs' cause of action for an alleged violation of HAZCOM fails because Radiator ceased manufacturing raffinated-Liquid Wrench prior to its inception in 1983, and it thus created no legal duty.

For the foregoing reasons, as supported by the above undisputed facts and authorities, this Court should enter an Order granting summary judgment in favor of Radiator Specialty Company on all counts contained in Plaintiffs' Third Amended Complaint, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,


By:_____*/s/ James M. Riley, Jr.*_____
                    James M. Riley, Jr.
State Bar No. 16931800

ATTORNEY IN CHARGE FOR DEFENDANT
RADIATOR SPECIALTY COMPANY


OF COUNSEL
Stacy Seidlitz Yates
State Bar No. 24002925
COATS, ROSE, YALE, RYMAN & LEE, P.C.
3 Greenway Plaza, Suite 2000
Houston, Texas  77046-0307
(713) 651-0111
(713) 651-0220 (Facsimile)


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to Plaintiffs' counsel by certified mail, return receipt requested, and ECF service, and all other known counsel by ECF service on this 27th day of October, 2008.


_____*/s/ James M. Riley, Jr.*_____
                    James M. Riley, Jr.